## THE CITY OF LYNN.

(*District Court, D. Massachusetts.* February, 1882.)

1. **COLLISION—BETWEEN VESSEL IN MOTION AND VESSEL MOORED TO A WHARF.**
    Where a vessel in motion comes into collision with one at anchor or moored to a wharf, the presumption is that it was the fault of the vessel in motion, unless the anchored or moored vessel was where she should not have been.

2. **SAME—NEGLIGENT MOORING—FAULT.**
    Where a steam-vessel was moored at a wharf adjoining a ferry slip, and her stern extended beyond the wharf and into the ferry slip, and the ferry-boat, in entering the slip, struck against the fender piling, causing it to swing back so far that the guard of the ferry-boat came in contact with the stem of the steam-vessel, it was *held* no fault on the part of the ferry-boat, where it had notified the steam-vessel of its dangerous position, and had taken all due care to avoid the collision.

*John C. Dody & Sons,* for libellant.

*T. H. Russell* and *Augustus Russ,* for claimants.

NELSON, D. J.   Libel filed by the master in behalf of the owners of the British steam-ship Secret against the steam ferry-boat City of Lynn, in a cause of collision.   The ferry-boat is owned by the Boston, Revere Beach & Lynn Railroad Company, who appear as claimants, and is used for conveying passengers between Boston and the terminus of the railroad company's tracks, on the opposite side of the harbor.   The company's wharf and ferry slip on the Boston side lie immediately north of Foster's wharf, and the south line of the slip is on the north line of Foster's wharf.   Rows of piles, serving as a fender to the ferry slip on the southerly side, are driven within the slip close to Foster's wharf, under and in compliance with an order of the harbor commissioners, dated October 23, 1879, which requires that they shall be driven so far within the line of the company's dock-room that the swaying of the piles and fender outward shall in no case extend beyond the dock-room of the company.   The Secret is a steel steam-ship, plying between Boston and the ports of Annapolis and Digby, Nova Scotia.   She arrived in Boston from one of her trips early in the morning of October 15, 1881, and soon afterwards made fast to the end of Foster's wharf, which was her regular berth, with her port side to the wharf and her bow towards the ferry slip.   She continued in this position during the day, discharging her cargo.   In the afternoon of that day the City of Lynn, in entering the ferry slip on one of her regular trips, came in collision with the Secret, the port

guard of the ferry-boat striking the stem of the steam-ship on the starboard side, about 18 inches from the cutwater, and causing the injury complained of.

The main controversy in the case relates to the position of the Secret's stem at the time of the accident. The libellants insist that it lay wholly opposite Foster's wharf, and that no part of it extended beyond the wharf into the ferry slip. But I am satisfied they are mistaken. The accident occurred in this way, as I think the preponderance of the evidence proves : The ferry-boat, in entering the slip, struck against the fender piling on the southerly side, causing it to swing back so far that the guard of the ferry-boat came in contact with the Secret's stem. It projected so far past the end of the wharf, and came so close up to the inner face of the piling, as to make the accident inevitable whenever the ferry-boat happened to strike against the piling with considerable force.

The rule of law applicable to this state of facts is this : If a ship in motion comes in collision with one at anchor or moored to a wharf, the presumption is that it was the fault of the ship in motion, unless the anchored or moored vessel was where she should not have been. If a vessel is anchored or moored in an improper place, she must take the consequences which fairly result from her improper act. But whether she is in an improper place or not, or whether properly or improperly anchored or moored, the other vessel must avoid her if it be reasonably practicable and consistent with her own safety. *The John Adams,* 1 Cliff. 404, 413. The Secret was improperly moored. The space over which the piling swayed was a part of the company's slip, and the libellants had no right to place their vessel in front of it, so as to obstruct the entrance of the ferry-boat. The dangerous position of the steamship was noticed by those employed on the ferry early in the morning, and they called the attention of those on the steamship to it several times during the day, and requested them to haul further astern. This they did not do, and their neglect was the sole cause of the accident. I find no evidence of neglect or misconduct on the part of the ferry-boat. She seems to have exercised all due care to avoid the collision. The libellants contended that she was bound at all events to avoid the collision, and that she should either have discontinued her trips, or else have applied to the harbor-master to compel a change of position by the Secret. She was obviously bound to do neither. She performed her entire duty in giving notice to the Secret of her dangerous position

as soon as discovered, and in doing what she could to avoid collision. If after notice the Secret saw fit to retain her position, she did so at her own risk.

The libellants further contended that even if the Secret's stem extended beyond the end of the wharf it was rightfully there, and did not encroach upon the premises of the railroad company. The order of the harbor commissioners above referred to authorized the company to build its wharf and ferry slip "in conformity to a plan filed in this office, and numbered 504, and on and within lines described as follows." In the description which follows, the boundary of the slip on the south is the northerly line of Foster's wharf. The plan itself was produced, and apparently shows a space about three feet wide between the south line of the slip and the north line of the wharf at its outer end, and it is true that the steamer's stem did not extend more than three feet beyond the end of the wharf. But if a discrepancy exists between the plan and the boundaries given in the order, the boundaries must govern, and, as against a mere stranger like the Secret, the actual occupation by the railroad company up to the line of the wharf, under a claim of right, must be conclusive evidence of its title.

The forty-fourth rule of the supervising inspectors of steam-vessels requires that "all passenger and ferry steamers shall, in addition to the regular pilot on watch, have one of the crew also on watch in or near the pilot-house." This additional watch was not kept on the ferry-boat at the time of the accident. But as the pilot knew of the position of the steam-ship, and saw her in ample season, and did all that, under the circumstances, was reasonably practicable to do to avoid her, this violation of the rule did not contribute in the slightest degree to the accident, and therefore cannot be relied upon by the libellants. *The Leopard*, 1 Low. 238.

A second collision is alleged in the libel to have occurred between the ferry-boat and the steam-ship at about 8 o'clock of the evening of the same day, but no proof was produced in support of the allegation.

Libel dismissed, with costs.